UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CLAUDETTE WASHINGTON AND COURTNEY SKIDMORE WILLIAMS, Individually and on behalf of their late husband/father, KURT LAWRENCE SKIDMORE <br><br> Plaintiffs <br><br> VERSUS <br><br> EAGLE, INC.; TAYLOR-SEIDENBACH, INC.; THE LOUISIANA INSURANCE GUARANTY ASSOCIATION; HOPEMAN BROTHERS, INC.; GENERAL ELECTRIC COMPANY; VIACOM, INC. as successor in interest to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION; GOULDS PUMPS LLC; FOSTER WHEELER LLC; CRANE CO.; CONOCOPHILLIPS COMPANY, Individually and as successor-in-interest to PHILLIPS PETROLEUM COMPANY; EXXONMOBIL OIL CORPORATION SHELL OIL COMPANY; TEXACO, INC.; THE TRAVELERS INSURANCE COMPANY as an alleged insurer of the following Avondale Industries, Inc.'s alleged executive officers – Peter Territo and George Kelmell <br><br> Defendants | CIVIL ACTION NO. _____ <br><br> SECTION: _____ <br><br> JUDGE: _____ <br><br> MAG. JUDGE _____ |

**NOTICE OF REMOVAL**

NOW INTO COURT, comes The Travelers Indemnity Company (incorrectly named as "The Travelers Insurance Company") ("Travelers"), as an alleged insurer of Peter Territo and George Kelmell[1], two alleged executive officers of Avondale Industries, Inc. ("Avondale"), and pursuant to 28 U.S.C. §§ 1441, 1442, and 1446, notices the removal of the above-entitled action

---

[1] Peter Territo (deceased) and George Kelmell (deceased) are hereinafter referred to as "Avondale's Alleged Executive Officers."

bearing No. C-723321 on the docket of the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana (the "State Case"), to the United States District Court for the Middle District of Louisiana.

1.

This Court has subject matter jurisdiction because the State Case is an action for or relating to conduct under color of federal office commenced in a state court against persons acting under one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1).

2.

Venue is proper in this Court because it is the district court for the district in which the State Case is pending. 28 U.S.C. § 1442(a).

3.

On September 9, 2022, plaintiffs, Claudette Washington and Courtney Skidmore Williams ("Plaintiffs"), filed a Petition for Damages in the suit bearing Case No. C-723321 in the 19th Judicial District Court for the Parish of East Baton Rouge, naming several entities as defendants.[2] The Petition for Damages alleged that Kurt Lawrence Skidmore's occupational exposures to asbestos-containing products from the 1970s to 1980s caused him to sustain "asbestos-related lung disease and death."[3] Plaintiffs did not name Avondale or Travelers as a defendant in the Petition for Damages, but did allege Mr. Skidmore sustained occupational asbestos exposures while employed by Avondale.[4]

4.

---

[2] *See* Exhibit 1, Petition for Damages.
[3] *Id.* at ¶ 4; Exhibit A to Plaintiffs' Petition for Damages.
[4] *Id.* at ¶ 8.

On August 14, 2023, Plaintiffs filed a First Supplemental and Amending Petition.[5] For the first time, the First Supplemental and Amending Petition asserts a claim against Travelers, as the alleged insurer of Avondale's Alleged Executive Officers.[6]

5.

The First Supplemental and Amending Petition alleges that Avondale and Avondale's Alleged Executive Officers were required to comply with the standards related to asbestos set forth specifically by the Walsh-Healey Public Contracts Act ("Walsh Healey Act").[7] The First Supplemental and Amending Petition further alleges that Avondale and Avondale's Alleged Executive Officers failed "to comply with applicable… Federal regulations regarding workplace exposure to asbestos."[8] Plaintiffs further allege that Avondale negligently delegated its responsibilities for asbestos safety to Avondale's Alleged Executive Officers, which led to Mr. Skidmore's asbestos-related lung disease and death.[9] Plaintiffs consequently contend that Avondale's Alleged Executive Officers caused Mr. Skidmore's lung cancer due to the failure of Avondale and Avondale's Alleged Executive Officers to abide by the Walsh Healey Act.[10]

6.

The Walsh Healey Act applied to U.S. government contracts with private entities exceeding $10,000.00 for the manufacturing or furnishing of goods. Through the Walsh Healey Act, the federal government issued advisories to government contractors regarding asbestos and safety standards related to the levels of permissible asbestos exposure. Avondale asserts in public records that the only federal contracts that it had in the 1970s and 1980s, and thus the only contracts

---

[5] *See* Exhibit 2, Plaintiffs' First Supplemental and Amending Petition.
[6] *Id.* at ¶¶ 1(a) and 1(f), 30.
[7] *Id.* ¶ 26(i).
[8] *Id.* at ¶ 27(h).
[9] *Id.* at ¶¶ 26 and 27.
[10] *Id.* ¶ 2.

3

invoking the requirements of the Walsh Healey Act, were contracts between Avondale and the United States to build different types of Federal Vessels.

7.

Avondale asserts in public records that during the 1970s to 1980s—Kurt Lawrence Skidmore's alleged employment and exposure period—Avondale constructed at least 64 vessels pursuant to contracts with the federal government. More specifically, Avondale asserts in public records that it constructed these vessels pursuant to contracts with the U.S. Navy, the U.S. Coast Guard, and the U.S. Maritime Administration ("MARAD"). These vessels included U.S. Navy Destroyer Escorts, U.S. Coast Guard Cutters, and LNG carriers and LASH cargo vessels constructed for MARAD (collectively, the "Federal Vessels"). Avondale further asserts in public records that it built Federal Vessels with asbestos-containing products and materials pursuant to Navy, Coast Guard, and MARAD's requirements. Thus, to the extent Plaintiffs allege that Mr. Skidmore sustained occupational exposures to asbestos-containing materials at Avondale resulting from related violations of the Walsh Healey Act, such exposures are necessarily attributable to asbestos-containing materials required and destined for use in the construction of Federal Vessels.

8.

Avondale asserts in public records that it built the Federal Vessels with asbestos-containing products and materials pursuant to the U.S. Government's requirements. Thus, to the extent Plaintiffs allege that Mr. Skidmore sustained occupational exposure to asbestos-containing products at Avondale during the 1970s to 1980s, those alleged exposure could only have been attributable to asbestos-containing products required and destined for use in the construction of these Federal Vessels.

9.

Thus, Plaintiffs' First Supplemental and Amending Petition reveals on its face that Plaintiffs are claiming that Mr. Skidmore's exposure to asbestos at Avondale is attributable, in part, to asbestos used and installed on Federal Vessels pursuant to Avondale's contracts with the federal government. *See, e.g., Bourgeois v. Huntington Ingalls, Inc.,* No. 20-1002, 2020 WL 2488026 at *10 (E.D. La. May 14, 2020) ("Under the broad reading of 'relating to' *Latiolais* dictates, … the evidence that six Navy vessels were under construction while Bourgeois worked at Avondale, tend to show that Bourgeois was likely exposed to asbestos used under the direction of a federal officer, thereby satisfying the connection prong") (Ashe, J.); *Ragusa v. Louisiana Insurance Guaranty Association,* 573 F.Supp.3d 1046, 1052 (E.D. La. Nov. 23, 2021) ("Under the broad reading of the connection prong, the evidence that at least two federal vessels were under construction during the time of the alleged exposure tends to show that Plaintiff was likely exposed to asbestos being used under the direction of a federal officer") (Barbier, J.).

10.

On August 28, 2023, Plaintiffs served the First Supplemental and Amending Petition on Travelers. Accordingly, Travelers files this Notice of Removal within thirty (30) days of service of the First Supplemental and Amending Petition on Travelers.[11]

11.

This action involves persons acting under the authority of an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1). To establish jurisdiction under this statute, a defendant must show: (1) it has asserted a colorable federal defense, (2) it is a "person" within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the

---

[11] *See* Exhibit 1.

charged conduct is related to an act pursuant to a federal officer's directions. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (*en banc*).

12.

Avondale and Avondale's Alleged Executive Officers are "persons" within the meaning of 28 U.S.C. § 1442(a)(1). *See Savoie v. Huntington Ingalls Incorporated,* 817 F.3d 457, 461 (5th Cir. 2016).

13.

Avondale and Avondale's Alleged Executive Officers were "acting under" an "officer … of the United States or [an] agency thereof" within the meaning of 28 U.S.C. § 1442(a)(1) when it built the above-mentioned Federal Vessels, including U.S. Navy Destroyer Escorts and U.S. Coast Guard Cutters, for the United States government because the United States government contracted with Avondale to perform a task that the federal government otherwise would itself have had to perform—namely, to build ships "used to help conduct a war," for use as naval and military auxiliaries, to promote foreign and domestic commerce, and to further other national interests. *E.g.*, *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153-54 (2007); *Savoie,* 817 F.3d at 461-62 (Avondale was acting under a federal officer in the construction of vessels for the United States Navy); *Becnel v. Lamorak Insurance Co.*, 2020 WL 587666, *5 (E.D. La. Sept. 18, 2020) (same); *Cortez v. Lamorak Ins. Co.*, 2020 WL 6867250, *5-6 (E.D. La. Nov. 23, 2020) ("Avondale acted under color of a federal officer by constructing… Cutters for the U.S. Coast Guard).

14.

Avondale and Avondale's Alleged Executive Officers were also "acting under" an "officer … of the United States or [an] agency thereof" within the meaning of § 1442(a)(1) when Avondale built the LNG carriers and LASH cargo vessels pursuant to contracts with MARAD because the

United States government, acting through MARAD, had contracted with Avondale to perform a task that the government otherwise would itself have had to perform – to build ships for use as naval and military auxiliaries, to promote foreign and domestic commerce, and to further other important national interests. *Becnel*, 2020 WL 587666, at *5 (E.D. La. Sept. 18, 2020) (holding that Avondale Interests acted under a federal officer when constructing vessels for MARAD); *Roussell v. Huntington Ingalls, Inc*., 2020 WL 7396517, *3 (E.D. La. Dec. 17, 2020) (same).

15.

To the extent that Kurt Lawrence Skidmore allegedly sustained occupational asbestos exposures in violation of the Walsh Healey Act's asbestos standard while employed by Avondale in conjunction with the construction of the Federal Vessels, the use of asbestos-containing materials on the Federal Vessels was required, controlled, and/or authorized by officers of the United States.

16.

Plaintiffs' claims against Avondale's Alleged Executive Officers are claims "for or related to" acts performed under color of federal office within the meaning of the text of 28 U.S.C. § 1442(a)(1) because the charged conduct is "connected or associated with" an act under a federal officer's direction. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d at 296.

17.

Avondale asserts in public records that the United States government's contractual provisions and design specifications mandated Avondale's use and installation of asbestos-containing materials in the construction of Federal Vessels.

18.

Avondale asserts in public records that materials used in the construction of the Federal Vessels—including asbestos-containing materials—were the kind, type, and brand of materials specifically mandated by the vessel construction contracts between Avondale and the United States government, and by the incorporated drawings, plans and specifications for the construction of the Federal Vessels.

19.

Avondale asserts in public records that its shipbuilding process— including the use and installation of asbestos-containing materials aboard the Federal Vessels—was supervised and monitored by inspectors and other representatives of the United States government to ensure that Avondale complied with the design specifications mandated by the U.S. Navy, the U.S. Coast Guard, and MARAD.

20.

Avondale asserts in public records that inspections by representatives of the United States government included a determination that the supplies (including raw materials, components, and end products) used in the construction of the Federal Vessels were the supplies required by the contracts and specifications, including asbestos-containing materials. Inspections occurred throughout construction and prior to final acceptance of the Federal Vessels. Avondale further asserts in public records that if it did not use the supplies required by the contracts, including asbestos-containing materials, the federal government could demand that Avondale replace the supplies with conforming materials and/or put Avondale in default of its contracts for the construction of the Federal Vessels.

21.

Avondale asserts in public records that the United States government required Avondale to provide representatives of the United States government, including government inspectors, with office space and other attendant facilities within the shipyard.

22.

Avondale asserts in public records that United States government's representatives conducted extensive Dock Trials, Builder's Trials, and Sea Trials on the Federal Vessels by prior to the commission of each Federal Vessel to ensure conformity with the United States government's mandatory design specifications.

23.

Avondale asserts in public records that the United States government also promulgated specific safety rules, regulations, and requirements for shipbuilding. These regulations included specific permissible safe exposure levels for asbestos pursuant to the Walsh Healey Act, the Occupational Health and Safety Act, and the United States Department of Labor Safety and Health Regulations for Shipbuilding (29 C.F.R. § 1502.1), which set safety standards to meet the provisions of the Longshore and Harbor Workers' Compensation Act requirements to render Avondale's workplace safe pursuant to 33 U.S.C. § 941. Avondale asserts in public records that it was guided by and required to comply with these safety regulations during construction of the Federal Vessels. As a result, federal safety inspectors specifically monitored and enforced these safety regulations as well as the construction of the Federal Vessels on a day-to-day and job-specific basis.

24.

There are three colorable federal defenses to Plaintiffs' claims in this action. First, one or more of Plaintiffs' claims is preempted and barred by the exclusive remedy provisions of the

Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq. See, e.g., Ingalls Shipbuilding Corp., Div. of Litton Sys. v. Morgan,* 551 F.2d 61, 62 (5th Cir. 1977). This colorable federal defense is raised in an abundance of caution. The recent three-judge panel decision in *Barrosse v. Huntington Ingalls Incorporated,* No. CA 21-30761 (5th Cir. Jun. 12, 2023), reversing the Eastern District of Louisiana's decision which applied LHWCA immunity to similar claims against Avondale, is still going through the appeal process. The deadline to file a writ of certiorari with the United States Supreme Court has not yet expired.

25.

Second, one or more of Plaintiffs' claims are barred under the jurisprudential doctrine of government contractor immunity established by *Boyle v. United Techs. Corp.,* 487 U.S. 500 (1988), and its progeny. *See Latiolais,* 951 F.3d at 297-98 (holding Avondale's *Boyle* defense is colorable). Furthermore, Plaintiffs' negligence claims relate to the acts performed under color of federal office.

26.

The reasonably precise design specifications established by the federal government mandated the installation of asbestos-containing materials on the Federal Vessels. The Federal Vessels conformed to the specifications mandated by the United States government—including the specifications mandating the use of asbestos—and Avondale, therefore, built the Federal Vessels using asbestos. The federal government had knowledge of the potential hazards of asbestos-containing materials in the workplace that was equal to or superior to that of Avondale.

27.

Third, Plaintiffs' claims are barred by the federal defense of derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), and its progeny.

*Yearsley* established that a federal government contractor, performing at the direction and authorization of a federal government officer, is immune from suit based upon performance of the contract. The *Yearsley* doctrine applies here, because Avondale performed the at-issue acts at the direction of federal government officers acting pursuant to federal government authorization.

28.

Removal under 28 U.S.C. § 1442 does not require the consent of any defendant.  *See Ely Valley Mines, Inc. v. Hartford Acc. and Indemnity Co.,* 644 F.2d 1310 (9th Cir. 1981); *Bottos v. Avakian,* 477 F. Supp. 610 (N.D. Ind. 1979), *aff'd*, 723 F.2d 913 (7th Cir. 1983).

29.

Because this Court has federal officer jurisdiction over at least one claim asserted by Plaintiffs, it has supplemental jurisdiction over the entire action. *Savoie,* 817 F.3d at 463; 28 U.S.C. § 1367(a).

30.

With this Notice of Removal, Travelers is filing a "copy of all process, pleadings, and orders served upon" it in the State Case.  28 U.S.C. §§ 1446(a), (d).  In addition, written notice is being given to all adverse parties, and a copy of this Notice of Removal is being filed with the Clerk of the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.

**ACCORDINGLY**, The Travelers Indemnity Company gives notice that the proceeding bearing case No. C-723321 on the docket of the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, is removed to the docket of this Court for trial and determination as provided by law, and asks that this Court enter such orders and issue such process as may be proper to bring before it copies of all records and proceedings in the State Case, and to proceed with this civil action as a matter properly removed.

Respectfully submitted,

*/s/ Kristopher T. Wilson*

Kristopher T. Wilson (#23978)
Patricia C. Penton (#1120)
**Lugenbuhl, Wheaton, Peck, Rankin & Hubbard**
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: 504-568-1990
Facsimile: 504-310-9195
Email:
kwilson@lawla.com
ppenton@lawla.com

**Counsel for The Travelers Indemnity Company (incorrectly named as "The Travelers Insurance Company"), as an alleged insurer of the following Avondale Industries, Inc.'s alleged executive officers – Peter Territo and George Kelmell**

-and-

**IRWIN FRITCHIE URQUHART MOORE & DANIELS, LLC**

/s/ *David M. Melancon*
Gus A. Fritchie (#5751)
Timothy F. Daniels (#16878)
David M. Melancon (#23216)
Alison A. Spindler (#34103)
Kevin Powell (#25324)
Diana J. Masters (#37372)
Connor W. Peth (#39499)
Kelli Murphy Miller (#40465)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: 504-310-2100
Facsimile: 504-310-2101
E-Mail: IrwinAvondale@irwinllc.com
**Co-Counsel for The Travelers Indemnity Company (incorrectly named as "The Travelers Insurance Company"), as an alleged insurer of the following Avondale Industries, Inc.'s alleged executive officers – Peter Territo and George Kelmell**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Notice of Removal was filed electronically with the Clerk of Court using the Court's CM/ECF system and a copy sent to all counsel of record by electronic means on the 27th day of September, 2023.

/s/ *David M. Melancon*