UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**CLAUDETTE WASHINGTON, ET AL.**

**VERSUS**

**EAGLE, INC., ET AL.**

**CIVIL ACTION**

**No. 23-1381-BAJ-SDJ**

### MAGISTRATE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiffs' Motion to Remand, filed on November 6, 2023. (R. Doc. 30). The Motion is opposed by Defendant Hopeman Brothers, Inc. (R. Doc. 41), and by Defendant Travelers Insurance Company (R. Doc. 43). Plaintiffs filed a Supplement to their Motion to Remand on June 19, 2024 (R. Doc. 71), and Defendant ExxonMobil Oil Corp. opposed the substance of that supplement (R. Doc. 73).

### I.   Procedural Background

This case originated in the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana, on September 12, 2022 (R. Doc. 1-2). Plaintiffs Claudette Washington Skidmore and Courtney Skidmore Williams brought claims against several defendants after the death of their husband and father, Kurt Lawrence Skidmore.[1] (R. Doc. 1-2 at 1). Plaintiffs' claims relate to Defendants' "mining, processing, manufacturing, installation, maintenance, sale, distribution, and/or use of asbestos and asbestos-containing products". (R. Doc. 1-2 at 1). Plaintiffs claim that Kurt Skidmore was exposed to asbestos many times through the course of his career, that each individual exposure directly caused or contributed to his injury and death, and that all Defendants

---

[1] In this writing, "Skidmore" refers to Kurt Skidmore, the deceased; Claudette and Courtney Skidmore are "Plaintiffs".

are liable for damages. (R. Doc. 1-2 at 2). Plaintiffs' original petition names as defendants Eagle, Inc.; Taylor-Seidenbach, Inc.; the Louisiana Insurance Guaranty Association; and Hopeman. (R. Doc. 1-2 at 8). Plaintiffs amended their petition on August 15, 2023, to add seven more defendants: two deceased executive officers of Avondale Industries, Inc.;[2] Travelers, as Avondale's insurer;[3] ConocoPhillips Company; Exxon; Shell Oil Company; and Texaco, Inc. (R. Doc. 1-3 at 1). The Amended Petition adds premises claims, insurance claims, and negligence claims against the executive officers. (R. Doc. 1-3).

On September 27, 2023, Travelers timely removed the case to this Court,[4] citing federal jurisdiction under 28 U.S.C. § 1442(a)(1), federal officer jurisdiction. (R. Doc. 1). No other Defendants joined the removal.[5] Plaintiffs filed their first Motion to Remand on November 6, 2023. (R. Doc. 30). Hopeman filed a Memorandum in Opposition on November 22, 2023 (R. Doc. 41), and Travelers filed its Memorandum in Opposition on November 27, 2023 (R. Doc. 43).

On June 18, 2024, Plaintiffs and Travelers filed a Joint Motion to Dismiss, representing to the Court that Plaintiffs have resolved all claims against Travelers and its insureds. (R. Doc. 70). The Court granted the motion, and so Travelers was dismissed on June 20, 2024, leaving claims against all other Defendants intact. (R. Doc. 72). In light of the dismissal of Travelers, Plaintiffs filed a Supplement to their Motion to Remand on June 19, 2024. (R. Doc. 71). Exxon filed its Memorandum in Opposition to the Supplemental arguments on June 26, 2024. (R. Doc. 73).

---

[2] Through Avondale's insurer, Travelers Insurance Company.
[3] Travelers is sued as an insurer defendant, standing in the place of Avondale and its executive officers. (*See* Amended Petition, R. Doc. 1-3 at ¶ 30). Travelers and the deceased executive officers will sometimes be referred to as the "Avondale Defendants".
[4] Travelers was served with the Amended Petition on August 28, 2023. (R. Doc. 1 at 5).
[5] Section 1442 does not require that removing defendant obtain consent of other defendants, nor do other defendants waive any right to independently argue for removal by failing to join in the removal. *See, e.g., Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014) (noting that removal under § 1442 does not require consent of co-defendants and holding that a defendant served after removal may assert its right to a federal forum); *accord In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 2012 WL 1448132, at *7 (E.D. La. Apr. 26, 2012) ("[S]ection 1442(a) permits removal of the entire case, not just the claims that serve as a basis for removal….").

On July 12, 2024, Hopeman filed into the record a Suggestion of Bankruptcy (R. Doc. 74), and on July 22, 2024, the Court acknowledged the automatic stay imposed by section 362 of the Bankruptcy Code. This Court stayed the instant action *only as to Hopeman*. (R. Doc. 76).

## II.     Arguments of the Parties

In their original Motion to Remand, Plaintiffs argue that Defendants cannot show the elements required to remove a case per § 1442. They assert that, while the Avondale Defendants may have been operating under federal contract, the conduct at issue—failure to provide a safe workplace and to use asbestos in accordance with federal and state laws and regulations—was not done at the direction of or acting under a federal officer. (R. Doc. 30-1 at 7-15). Furthermore, Plaintiffs assert that Defendants cannot show that they have a colorable federal defense.

In opposition, Travelers argues that the "acting under" requirement for federal officer jurisdiction should be broadly interpreted and indeed that other courts have found Avondale's shipbuilding for the US military satisfies §1442(a). (R. Doc. 43 at 11). Supporting its position, Travelers provides evidence that at the time of Skidmore's alleged asbestos exposure, Avondale's contracts with the US government required the use of asbestos, and that the use of asbestos was monitored by federal inspectors.[6] (R. Doc. 43 at 3). Travelers further alleges that Avondale adhered to federal regulations regarding repeated asbestos exposure, and that federal officials had the authority to halt operations if in violation of such regulations. (R. Doc. 43 at 5-6). Hopeman—a subcontractor for Avondale, working on US Coast Guard vessels—asserts similar arguments in its Opposition to Remand, including specific language from specifications for Coast Guard Cutters

---

[6] Travelers references the time period of Skidmore's exposure rather than a specific contract or project, presumably because Plaintiffs' Petition does not allege these specifics. Along with its Opposition to Remand, Travelers entered numerous exhibits, including affidavits and depositions regarding Avondale's shipbuilding operations, government contracts and oversight.

and MARAD[7] vessels requiring that components containing asbestos be installed. (R. Doc. 41 at 8-12).

After Plaintiffs and Travelers settled their dispute out of court and Travelers was dismissed, Plaintiffs supplemented their Motion to Remand. They argue that because Travelers alone asserted federal officer jurisdiction, and because no other Defendant could demonstrate entitlement to jurisdiction under §1442, the case should now be remanded for lack of federal jurisdiction. (R. Doc. 71). Exxon opposed this newly raised argument for remand, arguing that this Court retains jurisdiction so long as jurisdiction was proper at the time of removal, and noting that Plaintiffs' argument ignores Hopeman's claim to federal officer jurisdiction. (R. Doc. 73).

### III. Law and Analysis

#### A. Dismissal of Travelers Does Not Extinguish This Courts' Jurisdiction

As a threshold issue, we first address Plaintiffs' argument that dismissal of Travelers resolves all question of federal officer jurisdiction and necessitates remand. Exxon rightly points out that Hopeman remains as a subcontractor Defendant, having asserted its own entitlement to federal officer jurisdiction in its Opposition to Remand (R. Doc. 41). Furthermore, "the Fifth Circuit has held that dismissal of the federal defendant (the defendant entitled to section 1442 removal) does 'not deprive the district court of power to entertain the remaining state law controversy.'" *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 2012 WL 1448132, at *7 (E.D. La. Apr. 26, 2012) (citing *IMFC Professional Services of Florida, Inc. v. Latin American Home Health, Inc.*, 676 F.2d 152, 158 (5th Cir. 1982). And so, even ignoring Hopeman's assertion

---

[7] United States Maritime Administration.

of federal officer jurisdiction, this Court retains jurisdiction if Travelers properly removed under §1442.[8]

### B. Legal Standards for Federal Officer Removal

As amended in 2011 and still effective, the federal officer removal statute provides, in relevant part:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States ... :
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office ....

28 U.S.C. § 1442(a)(1) (2018). The Supreme Court has explained that the purpose of this provision is to protect the lawful activities of the federal government from undue state interference. *Neal v. Ameron Int'l Corp.*, No. 20-00172, 2020 WL 6153686, at *4 (M.D. La. Oct. 20, 2020), citing *Mesa v. California*, 489 U.S. 121, 126 (1989). Because the federal government "can act only through its officers and agents," it has a strong interest in ensuring that the states do not hinder those officers in the execution of their duties. *Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (quoting *Tennessee v. Davis*, 100 U.S. 257, 263 (1879)). If federal officers acting within the scope of their authority "can be arrested and brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection ... the operations of the general government may at any time be arrested at the will of one of its members." *Id.*

---

[8] As discussed below, this Court has twice addressed Avondale's entitlement to federal officer jurisdiction as relates to asbestos exposure at their shipyard. Because only one defendant need show jurisdiction per §1442, and because it has already addressed this issue at length, the Court will focus on the Avondale arguments again here.

Unlike the general removal statute, "[t]he Supreme Court has consistently urged courts to avoid 'a narrow, grudging interpretation of § 1442(a)(1).'" *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290–91 (5th Cir. 2020) (citing *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)); *see also Arizona v. Manypenny*, 451 U.S. 232, 242 (1981); *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). As the Supreme Court has explained, "the purpose of this provision is to protect the lawful activities of the federal government from undue state interference." *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc.*, 809 F.Supp.2d 524, (2011) (citing *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)). "Because of its broad language and unique purpose, the federal officer removal statute has been interpreted to operate somewhat differently than the general removal provision." *Id.* "Unlike the general removal statute, which must be 'strictly construed in favor of remand,' the federal officer removal provision's broad language must be liberally interpreted." *Id.* (internal citation omitted) (citing *Watson v. Philip Morris Cos. Inc.*, 551 U.S. 142 (2007) ("this Court has made clear that [§ 1442(a)] must be 'liberally construed' ")).

C. *Latiolais* **and Its Progeny**

To properly remove under 1442(a), a defendant must show that (1) it has asserted a colorable federal defense, (2) it is a "person" within the meaning of the statute, (3) it has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020). Before 2020, courts in the Fifth Circuit required a removing defendant to show "a causal nexus" between the defendant's acts under color of federal office and the plaintiff's claims. *Id.* at 291. In its unanimous, en banc decision in *Latiolais*, which involved a similar asbestos-exposure claim asserted against Avondale, the Fifth Circuit significantly expanded the law regarding federal officer removal. *Id.* at 289-90. Now, instead of "a causal

nexus," a defendant must only show that the charged conduct "is connected or associated with an act pursuant to a federal officer's directions" (if the other statutory requirements are met). *Id.* at 296. *Latiolais* effected a significant change in the prior law regarding the federal officer removal statute and overruled a line of cases that relied on the "causal nexus" between the defendant's acts performed under color of federal authority and the plaintiff's claims. *Jackson v. Avondale Industries Inc.*, 469 F. Supp. 3d 689, 702 (E.D. La. June 29, 2020), citing *Latiolais*, 951 F.3d at 291, 296. Importantly, prior to Latiolais, federal officer removal in the Fifth Circuit was limited to intentional tort or strict liability claims. Now at least some negligence claims are also removable. *Reulet v. Lamorak Ins. Co.*, 2021 WL 1151568, at *4 (M.D. La. Mar. 4, 2021) (citing *Latiolais* 951 F.3d at 296).

Post-*Latiolais*, this Court, and at least one other district court in the Circuit, have found federal officer removal proper under facts similar to those established here. Indeed, this division of this Court has already done so. In *Neal v. Ameron* and *Reulet v. Lamorak*, which both involved Avondale, this Court held that removal was proper under the federal officer removal statute. *Neal v. Ameron Int'l Corp.*, 495 F. Supp. 3d 375 (M.D. La. 2020); *Reulet*, 2021 WL. In those cases, Avondale filed substantially the same evidence as it submitted here, and this Court twice determined that Avondale had asserted a colorable federal defense by showing that the federal government "approved reasonably precise specifications" regarding the contractors' work, the work conformed to the government's specifications, and that the government was aware of asbestos hazards associated with Avondale during the relevant time period. *Reulet* at *5 (citing *Neal* at 385). For the same reasons Avondale established the first prong of a colorable federal defense, the Court also found that Avondale's charged conduct was connected with acts under federal office and

pursuant to a federal officer's direction. *Id.* Regarding the connection between the alleged acts and federal officer's directions, the Court held in *Neal*:

> Plaintiff claims the Avondale Defendants failed to warn him about the dangers of asbestos and failed to take certain precautions to prevent his exposure to asbestos. Plaintiff's claims relate to the Avondale Defendants' actions under color of federal office, specifically, their construction of Lykes ships to the required federal specifications. Accordingly, Plaintiff's challenged conduct is connected with the acts under federal office, thus satisfying this final requirement for removal.

*Neal* at 388. Several cases from the Eastern District of Louisiana have also upheld the propriety of federal officer removal under such facts. *See Reulet* at *5 (citing cases).

The Court noted that the *Reulet* plaintiffs' arguments did not rise to the level of bad faith, but that "they seem to disregard the sea change in the law brought about by *Latiolais* and make very thin efforts to adequately distinguish the growing line of cases that have upheld federal officer removal under similar facts". *Reulet* at *6. This Court now makes the same admonishment and adds a third case from this district to the *Latiolais* line. Accordingly, the Court will only briefly address the arguments below and refers to the body of cases repeatedly affirming federal officer jurisdiction for Avondale in asbestos claims resulting from its military shipbuilding operation.

### D. Federal Officer Removal Was Proper

#### 1. Avondale Has Raised Colorable Federal Defenses

Plaintiffs argue that removal was improper under §1442 because the Avondale Defendants have not asserted colorable federal defenses. (R. Doc. 30-1 at 16). To be "colorable," the asserted federal defense need not be "clearly sustainable," as §1442 does not require a federal official or person acting under him "to 'win his case before he can have it removed'". *Latiolais*, 951 F.3d at 296–97 (citing *Jefferson County*, 527 U.S. at 431). An asserted federal defense is colorable unless it is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial

and frivolous." *Latiolais*, 951 F.3d at 297. "The bar for what constitutes a 'colorable' defense is not high." *Jackson*, 469 F. Supp.3d at 703 (citing *Elie v. Ameron Int'l Corp.*, 2020 WL 2554317, at *2 (E.D. La. May 20, 2020)).

The Avondale Defendants contend that they have raised the following colorable federal defenses: (1) government contractor immunity under *Boyle*,[9] and (2) derivative sovereign immunity under *Yearsley*.[10] (R. Doc. 43 at 14). Under the government contractor defense, "liability cannot be imposed upon government contractors for design defects in military equipment when '(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 207 n. 5 (5th Cir. 2010) (quoting *Boyle*, 487 U.S. at 512).

In *Neal* and *Reulet*, this Court, upon considering substantially the same evidence and authority at issue here, including but not limited to a similar affidavit by Christopher P. Herfel, found that the Avondale Defendants raised colorable federal defenses. *Neal* at 384; *Reulet* at *6. The undersigned has also considered the arguments and evidence of the parties and finds that the government contractor defense constitutes a colorable defense in this action for the purposes of the federal officer removal statute for much the same reasons as set forth in those cases: 1) the evidence submitted shows that the federal government approved reasonably precise specifications for Avondale's operations at the time Skidmore worked there, including the requirement that Avondale use asbestos;[11] 2) the Avondale Defendants have demonstrated that Avondale's work

---

[9] *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988).
[10] *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940).
[11] Skidmore worked at Avondale as a maintenance mechanic helper from June 9, 1976, to July 16, 1977; as a tacker and welder from September 6, 1977, to January 22, 1980; and as a welder from February 11, 1987, to April 8, 1987. During those times, Avondale was constructing and maintaining various vessels for MARAD, the US Coast Guard

conformed with the government's specifications and regulations;[12] and 3) the Avondale Defendants have shown that "it is colorable that Avondale did not omit warning the government about any dangers about which the government did not know."[13]

The Court draws no conclusions as to whether Defendants will succeed in this defense, but the Avondale Defendants have shown that the federal *Boyle* defense is at least plausible. Because they have shown one colorable defense to meet the requirements of federal officer removal, the Court need not address any others at this time.

### 2. Avondale is a "Person" Within the Meaning of the Statute

Section 1442(a) includes both natural persons and corporations; therefore, both the individual executive officer Defendants and Travelers as Avondale's insurer are "persons" within the meaning of Section 1442(a), an issue that is not disputed by Plaintiffs. *See Neal* at 386 (citing *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (corporations are "persons" for removal pursuant to Section 1442) (overruled on other grounds by *Latiolais*)).

---

and the US Navy. (R. Doc. 43-1 at 4-5). The specifications for these vessels, which were approved by MARAD and incorporated into the contracts, all required the use of some asbestos materials. (R. Doc. 43-1 at 8-9). This Court came to the same conclusion in *Neal*. *Neal* at 384 ("Avondale submitted … another affidavit alleging that the Navy generally required Avondale to install asbestos and to comply with certain related safety practices. These documents make colorable that the government approved reasonably precise specifications about the installation of asbestos.").

[12] Despite Plaintiffs' argument to the contrary, the Avondale Defendants presented evidence that Avondale complied with the safety requirements of the Walsh-Healey Act and the Occupational Health and Safety Act in its use of asbestos-containing products, including the affidavit of Joyce. (R. Doc. 43-14, Joyce Affidavit of April 17, 2018). Joyce conducted a detailed review of the historical safety regulations governing Avondale's shipbuilding activities that were in effect from World War II to the present and found that "Avondale ... complied with governmental and industry rules and regulations relative to asbestos air quality." R. Doc. 43-14, ¶¶ 3, 6. The ultimate merits of the Avondale Defendants' defense are not addressed at this stage as that is not necessary to determine whether the defense is colorable. Accordingly, any genuine dispute of material fact with respect to the second *Boyle* factor is not appropriately decided at this stage of the litigation. *Laurent v. City of New Orleans*, 2014 WL 5410654, at *4 (E.D. La. Oct. 23, 2014) ("[A] motion to remand is not the proper mechanism by which to litigate a defendant's defense.").

[13] The testimony of Herfel and Joyce, submitted by the Avondale Defendants, is sufficient to establish a colorable showing of this factor because the federal government knew more than Avondale about the hazards of asbestos exposure. (R. Doc. 43 at 21-22); *see Neal* at 386 (citing *Latiolais*, 951 F.3d at 298 ("Avondale's evidence tends to support that the federal government knew more than Avondale knew about asbestos-related hazards and related safety measures. From such evidence, it is colorable that Avondale did not omit warning the government about any dangers about which the government did not know.")).

### 3. Avondale Acted Pursuant to a Federal Officer's Direction

Plaintiffs contend that it is not the use of asbestos that is at issue, but the Avondale executives' negligence in failing to provide a safe workplace "including failure to use reasonable care and take basic safety precautions required by federal and state law in the handling and use of asbestos." (R. Doc. 30-1 at 18). The Supreme Court has made it clear that the words "acting under" are broad and are to be liberally construed, though their interpretation must be limited by the statute's "language, context, history, and purposes." *Watson*, 551 U.S. at 147. "A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' " *Id.* at 153. A private entity acted under the direction of a federal officer when it "fulfilled the terms of a contractual agreement by providing the Government with a product that it used to help conduct a war" and arguably "performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." *Id.* at 153-54. For the reasons discussed above, the Court finds that Avondale—including its executive officers—was working pursuant to a federal officer's direction.

### 4. The Conduct at Issue is Connected to an Act Pursuant to a Federal Officer's Direction

The Avondale Defendants assert that Plaintiffs' claims relate to actions taken under federal direction, as shown by Plaintiffs' claims that Defendants failed to comply with Walsh-Healey standards—which only applied to contracts Avondale held with the government. (R. Doc. 43 at 24). In *Latiolais*, the Fifth Circuit found this requirement was satisfied because the defendant allegedly failed to warn the plaintiff of, or protect the plaintiff from, the dangers of asbestos—negligent acts that were "connected with the installation of asbestos during the refurbishment" of

a vessel allegedly performed "pursuant to directions of the U.S. Navy." *Latiolais*, 951 F.3d at 296. Similarly, the "connection" condition of removal is satisfied in this action. *Accord Reulet* at *8. Plaintiffs claim that the Avondale Defendants failed to warn Skidmore about the dangers of asbestos and failed to take certain precautions to prevent their exposure to asbestos. (R. Doc. 30-1 at 8). Plaintiffs' claims relate to the Avondale Defendants' actions under color of federal office, specifically, the construction of military vessels to the required federal specifications, which included the use of asbestos-containing material. Accordingly, Plaintiffs' challenged conduct is connected with acts under federal office, thus satisfying this final requirement for removal. The Court therefore has jurisdiction over this matter pursuant to the federal officer removal statute.

### IV.    Conclusion

As the requirements of federal officer removal were met at the time of removal,

**IT IS RECOMMENDED** that the Motion to Remand (R. Doc. 30), including its Supplement (R. Doc. 71), be **DENIED**.

Signed in Baton Rouge, Louisiana, on August 28, 2024.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**